FILED
 2024 Jul-11  PM 04:12
U.S. DISTRICT COURT
    N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# JASPER DIVISION

| | |
|---|---|
| **CHRISTY ROBERTS,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | )  6:23-cv-01046-LSC |
| | ) |
| **MARTIN O'MALLEY,** | ) |
| **Commissioner of Social Security,** | ) |
| | ) |
| **Defendant.** | ) |
| | ) |

## MEMORANDUM OF OPINION

### I.     Introduction

Christy Roberts ("Roberts" or "Plaintiff") appeals the decision of the Commissioner's denial of her application for disability, disability insurance benefits ("DIB"), and supplemental security income ("SSI"). Roberts timely pursued and exhausted her administrative remedies, and the decision of the Commissioner is ripe for judicial review pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).

Roberts argues that the administrative law judge's ("ALJ's") determination that her residual functional capacity ("RFC") included the ability to frequently handle, finger, and feel with her bilateral upper extremities was not supported by

substantial evidence. Upon careful review of the record as well as consideration of the parties' briefs, this Court finds that the ALJ's decision was supported by substantial evidence.

II.     **Background**

Roberts was thirty-nine years old at the time her application was filed and is classified as a younger individual on the application date. (Tr. 38.) Roberts has her GED and limited prior work history. (Tr. 38, 56, 305.) Roberts previously worked as a fast-food manager, prior to the alleged onset of her disability in June 2020. (Tr. 305.) She alleges disability due to rheumatoid arthritis, epilepsy, renal colic, intersialzystits, [1] kidney stones, joint inflammation, high blood pressure, high cholesterol, severe muscle spasms, insomnia, and depression. (Tr. 304.)

The Social Security Administration has established a five-step sequential evaluation process for determining whether an individual is disabled and therefore entitled to receive DIB and SSI. *See* 20 C.F.R. §§ 404.1520, 416.920. In determining whether a claimant is disabled, the ALJ must first determine whether the claimant can engage in substantial gainful activity ("SGA"). 20 C.F.R. §§ 404.1520(a)(4)(i),

---

[1] The Court recognizes the nonexistence of "intersialzystits." However, Roberts' inclusion of this disease did not contribute substantially to the ALJ's analysis, but only as a small portion of the substantive evidence acquired during the ALJ's review. It remains unnamed throughout the ALJ's conclusions and holds little significance throughout the ALJ's holding.

416.920(a)(4)(i). If the claimant is not engaged in SGA, then the ALJ must determine whether the claimant has a "severe" medically determinable impairment, or combination of impairments. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant has a severe medically determinable impairment, then the ALJ must determine whether the claimant's impairments or combination of impairments meets or is medically equal to the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, and meets the duration requirement. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the claimant's impairment or combination of impairments does not meet or medically equal a listed impairment, the ALJ then must determine whether the claimant has the RFC to perform the requirements of her past work. *See id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). The RFC is an assessment of a claimant's ability to do work despite her impairments. *Id.* § 416.945(a)(1); *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997). If the claimant is unable to perform her past work, the ALJ must determine whether the claimant can perform any other work given her RFC, age, education, and work experience. *See id.* §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the claimant cannot perform other work, then the ALJ will find her disabled.

After a hearing in September 2022, the ALJ concluded that Roberts had the severe impairments of rheumatoid arthritis, somatic symptom disorder, depressive

disorder, and anxiety disorder. (Tr. 32.) The ALJ also concluded that Roberts did not have any impairments or combination of impairments that met the severity of 20 C.F.R, Part 404, Subpart P, Appendix 1. (Tr. 32-33.) Regarding Roberts' RFC, the ALJ concluded that she could perform sedentary work as defined in 20 C.F.R. 404.1567(a) and 416.967(a). (Tr. 33.) The ALJ concluded that Roberts can "occasionally climb ramps and stairs, but she can never climb ladders, ropes, or scaffolds." (*Id.*) Additionally:

> [Roberts] can occasionally balance, stoop, kneel, crouch, and crawl. The claimant can frequently handle, finger, and feel with her bilateral upper extremities. The claimant should avoid concentrated exposure to extreme cold, extreme heat, and vibration. She should avoid all exposure to hazardous conditions such [as] unprotected heights and dangerous machinery. The claimant can understand, remember, and carry out short, simple instructions. She can occasionally interact with supervisors and coworkers, but she can never interact with the general public. The claimant can tolerate infrequent and gradually introduced changes in the workplace.

(Tr. 33-34.)

The ALJ found that Roberts' RFC prevented her from working her past relevant work as a fast-food service manager. (Tr. 38.) However, after consulting with a vocational expert ("VE"), and considering her age, education, and experience, the ALJ found that Roberts could perform other jobs such as document preparer, final assembler, or weight tester. (Tr. 39, 65-66.) Since Roberts could perform other

work given her RFC, she was not found to be disabled and did not qualify for DIB or SSI. (Tr. 39.)

III.     **Standard of Review**

This Court's role in reviewing claims brought under the Social Security Act is a narrow one. The scope of its review is limited to determining (1) whether there is substantial evidence in the record as a whole to support the findings of the Commissioner and (2) whether the correct legal standards were applied. *See Stone v. Comm'r of Soc. Sec.*, 544 F. App'x 839, 841 (11th Cir. 2013) (citing *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004)). This Court gives deference to the factual findings of the Commissioner, provided that those findings are supported by substantial evidence, but applies close scrutiny to the legal conclusions. *See Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996).

Nonetheless, this Court may not decide facts, weigh evidence, or substitute its judgment for that of the Commissioner. *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004)). "The substantial evidence standard permits administrative decision makers to act with considerable latitude, and 'the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.'" *Parker v. Bowen*, 793 F.2d 1177,

1181 (11th Cir. 1986) (Gibson, J., dissenting) (quoting *Consolo v. Fed. Mar. Comm'r*, 383 U.S. 607, 620 (1966)). Indeed, even if this Court finds that the proof preponderates against the Commissioner's decision, it must affirm if the decision is supported by substantial evidence. *See Miles*, 84 F.3d at 1400 (citing *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)).

However, no decision is automatic, for "despite th[e] deferential standard [for review of claims], it is imperative that th[is] Court scrutinize the record in its entirety to determine the reasonableness of the decision reached." *Bridges v. Bowen*, 815 F.2d 622, 624 (11th Cir. 1987) (citing *Arnold v. Heckler*, 732 F.2d 881, 883 (11th Cir. 1984)). Moreover, failure to apply the correct legal standards is grounds for reversal. *Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984) (citing *Wiggins v. Schweiker*, 679 F.2d 1387, 1389 (11th Cir. 1982), *superseded on other grounds by Harner v. Comm'r of Soc. Sec.*, 38 F.4th 892 (11th Cir. 2022)).

### IV. Discussion

Roberts argues that the ALJ erred in evaluating her subjective complaints when making the RFC determination because he concluded that Roberts' statements regarding intensity, persistence, and limiting effects of her symptoms were inconsistent with the medical evidence. In particular, Roberts claims that the

conclusion that she can frequently handle, finger, and feel with her bilateral upper extremities is not supported by substantial evidence.

"Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate as to support a conclusion." *Crawford*, 363 F.3d at 1158. If the Commissioner's decision is supported by substantial evidence, this Court must affirm, even if the proof preponderates against it. *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). This court may not decide facts anew, reweigh the evidence, or substitute its own judgment for that of the Commissioner. *Id*. Furthermore, the ALJ is not required to cite every piece of evidence in the record, so long as the ALJ's decision demonstrates to the reviewing court that he considered the claimant's medical condition as a whole. 832 F. App'x at 654. An ALJ's decision is not supported by substantial evidence if it is reached by "focusing on one aspect of the evidence and ignoring other parts of the record." *Id*. (quoting *McCruter v. Bowen*, 791 F.2d 1544, 1548 (11th Cir. 1986)).

When a claimant seeks to establish disability through her testimony of pain or subjective symptoms, the claims must be supported by (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be

reasonably expected to give rise to the alleged pain. *Dyer,* 395 F.3d at 1210 (referencing *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991)).

Once a claimant provides evidence of an underlying medical condition, the ALJ then evaluates the intensity and persistence of the claimant's alleged symptoms and their effect on his ability to work. *See* 20 C.F.R. §§ 404.1529(c), 416.929(c); *Wilson v. Barnhart,* 284 F.3d 1219, 1225-26 (11th Cir. 2002). In evaluating the extent to which the claimant's symptoms, such as pain, affect his capacity to perform basic work activities, the ALJ will consider (1) objective medical evidence, (2) the nature of the claimant's symptoms, (3) the claimant's daily activities, (4) precipitating and aggravating factors, (5) the effectiveness of medication, (6) treatment sought for relief of symptoms, (7) any measures the claimant takes to relieve symptoms, and (8) any conflicts between a claimant's statements and the rest of evidence. *See* 20 C.F.R. §§ 404.1529(c)(3)-(4), 416.929(c)(3)-(4); SSR 16-3p. If the ALJ discredits the claimant's allegations regarding her subjective symptoms, the ALJ "must clearly articulate explicit and adequate reasons for doing so." *Id*.

Here, the ALJ found that Roberts had a medically determinable impairment that could reasonably be expected to cause the alleged symptoms. (Tr. 34.) However, upon considering the intensity, persistence, and limiting effects of Roberts' alleged symptoms, the ALJ concluded that Roberts' statements were not consistent with

the medical and other evidence in the record. (*Id.*) In making his determination, the ALJ discussed a variety of evidence to support his conclusion, including objective medical evidence, various types of treatment Roberts received and her responses to them, and treatment Roberts decided to discontinue in addition to her subjective complaints. (Tr. 33-36.)

Throughout his opinion, the ALJ discussed several of Roberts' medical visits from different doctors and pointed to several instances in which her subjective symptoms did not align with evidence and her prior statement regarding her pain.

The ALJ first looked at Roberts' visits to the Lakeland Community Hospital Emergency Room from January to May 2020. (*See* tr. 34.) Roberts was noted to have swelling and decreased motion in her left hand but had "5/5" motor strength and full range of motion in all her extremities. (Tr. 462, 466, 470, 474.) Following her visit to the emergency room, Roberts sought treatment for the swelling in her left hand from Dr. Dyas beginning June 17, 2020. (Tr. 549.) There, Roberts had a Nerve Conduction/EMG and x-rays performed. The x-ray revealed no abnormalities, and the Nerve Conduction/EMG returned normal. (Tr. 551, 574.) Concurrently to her visits with Dr. Dyas, Roberts also visited a physical therapist. (Tr. 551.)

The ALJ then considered Roberts' visits to the Russellville Orthopedic Center, where she sought treatment for a swollen metacarpophalangeal joint (MCP). (Tr. 35,

551-53, 555-59.) There, her laboratory studies were negative for inflammatory arthritis. (Tr. 35, 574.) Throughout several visits to the orthopedic center in July 2020, Roberts reported that her pain was not as bad, and was issued certificates to return to work stating that she had no restrictions. (Tr. 560, 562-64, 567.)

The ALJ then noted Roberts' response to surgical intervention. (Tr. 35.) In late July 2020, Roberts had an MRI of her upper left extremity that showed possible bone erosion. (Tr. 35, 530.) In August 2020, Roberts underwent a synovectomy in her left hand to address swelling in her left hand. (Tr. 532.) Following the synovectomy, Roberts' symptoms began to improve, "she had no new orthopedic complaints, and was doing well on pain management." (Tr. 35; *see also* tr. 526, 591, 592.) Roberts had several visits in the following months with a physical therapist. Roberts reported not having any "arthritic type pain" and noted improved mobility in her left hand and digits. (Tr. 592.) However, Roberts had some visits where she complained of swelling in her left hand and was ultimately referred to a rheumatologist by Dr. Dyas for further evaluation. (Tr. 524; *see also* tr. 595-597.)

Roberts visited Rheumatology Associates of North Alabama beginning in May 2021. (Tr. 35, 658-59.) Roberts was found to have "significant synovitis and muscle wasting of her second and fourth MCPs" as well as her left ankle. (Tr. 35, 81, 89, 101, 114, 659, 680.) However, x-rays of her hands and feet were unremarkable. (Tr. 679.)

Shortly after, Roberts had a follow-up visit with the rheumatologist and reported no real changes or hospitalizations from her prior visit. (Tr. 680.) Roberts' neuro exam was "grossly intact with independent ambulation and good strength [in her] major muscle groups." (*Id.*) In a later follow up appointment with the rheumatologist in August 2021, Roberts was found to have good spinal mobility, independent ambulation, and good strength in her major muscle groups. (Tr. 846.) However, Roberts reported having some gastrointestinal issues with Plaquenil, the medication that was prescribed to her, as well as some MCP fullness. (Tr. 35, 846.) Roberts was advised to discontinue using Plaquenil, which she did. (Tr. 35.) The ALJ noted that Roberts did not follow up with the rheumatologist after her August 2021 visit. (Tr. 35.)

Finally, the ALJ considered Roberts' treatment for anxiety from Capstone Rural Health from November 2021 through July 2022. (Tr. 35, 866-87.) There, Roberts reported that she was able to dress, bathe, and run errands, and she was able to move all extremities normally. (Tr. 35, 868, 870, 875, 881, 883, 886, 887.)

In addition to her medical records, the ALJ considered several consultative exams performed on Roberts. (Tr. 35-36.) At a consultative exam in December 2021, Roberts had 5/5 normal motor strength in her right arm, some weakness in her left arm at 4/5, normal grip strength in the right hand of 5/5, but her grip strength was

3/5 in her left hand. (Tr. 35, 828-29.) The doctor observed Roberts had "normal fine and gross manipulative skills" in her left hand, a normal range of motion, and no joint deformities. (Tr. 828-29.) The ALJ noted that the doctor failed to address any manipulative limitations, and consequently only found his opinion partially persuasive. (Tr. 36.)

The totality of these findings by medical professionals combined allowed the ALJ to properly reach the determination that Roberts' "statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." (Tr. 34.) Roberts repeatedly noted improvement in her pain management and mobility throughout her course of treatment. The ALJ thoroughly considered the objective medical evidence as well as other relevant findings and cited substantial evidence suggesting that Roberts was improving, and not as limited as she alleged. (Tr. 33-38.) Although Roberts exhibits medically determinable impairments from the swelling in her left hand, the ALJ accounted for her limitations in her RFC. (Tr. 35-36.) Therefore, the ALJ's decision was supported by substantial evidence.

## V.  Conclusion

Upon review of the record, and after considering Roberts' argument, this Court finds the Commissioner's decision is supported by substantial evidence and

should be affirmed.

**DONE** and **ORDERED** on July 11, 2024.

_____
L. Scott Coogler
United States District Judge

215708